# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| CHARLES WILLIS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No.   CV608-116 |
| | ) | CR606-026 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Charles Willis moves, over the government's partial opposition, for 28 U.S.C. § 2255 relief.  (Doc. 1 & 8.[1])  For the following reasons, his motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

Willis was sentenced to 192 months' imprisonment after pleading guilty to one count of conspiracy to possess with intent to distribute a quantity of cocaine base and cocaine hydrochloride.  After unsuccessfully

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV608-116.  "Cr. doc." refers to documents filed under movant's criminal case, CR606-026.

appealing his conviction and sentence, *United States v. Willis*, 228 F. App'x 687 (11th Cir. 2008) (per curiam), he filed the present § 2255 motion, asserting that his

(1) counsel were ineffective for failing to object to the career offender enhancement recommended in his Presentence Investigation Report ("PSI");

(2) counsel were ineffective for failing to present evidence contesting a two-level sentencing enhancement pertaining to a firearm found at his residence;

(3) counsel were ineffective for failing to object to the drug amounts attributed to him in the PSI;

(4) counsel ineffectively handled his motion to suppress;

(5) venue was improper in the Southern District of Georgia and counsel were ineffective for failing to advise him that he could object on the basis of venue and jurisdiction; and

(6) counsel were ineffective for advising him to take a harmful plea agreement.

(Doc. 1 at 5-10; doc. 2 ("Brief") at 6-9, 53.)

## II. ANALYSIS

### A. Governing Standards

Each of Willis's claims involve ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court

created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008)

(quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

The same *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). In *Jones v. Barnes*, 463 U.S. 745 (1983), however, the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id.* at 751-52. Appellate counsel has no duty to assert every potentially colorable claim

of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." *Id.*

## B.   Ground 1

Willis first contends that his sentencing attorneys, Richard Darden and William Bell, were ineffective for "not objecting to the Career Offender enhancement" applied at sentencing.  (Doc. 1 at 4.)  He also alleges that they were ineffective for failing to raise the claim on appeal. (*Id.*)  The government concedes, and this Court agrees, that counsel erred and that that error prejudiced Willis.  (Doc. 8 at 3-4; cr. doc. 838 at 1-3.)

Willis attempted to raise this claim substantively after appeal but before submitting his § 2255 motion.  (Cr. doc. 831.)  The district judge ruled that Willis was entitled to relief but the claim should be raised in a § 2255 motion:

> The complicating factor here stems from the fact that the Court sentenced Willis as an 18 U.S.C. Appx. § 4B1.1 career offender based on his prior, Northern District of Georgia, conviction for maintaining a continuing criminal enterprise (CCE), plus conspiracy/drug charges.  Willis objected at sentencing, claiming that his prior criminal records showed

he did not meet the CCE criteria -- because there had been no "intervening arrest" between the two prior felonies that this Court cited in enhancing his sentence. That term arises from U.S. Sentencing Guideline, 18 U.S.C. Appx. § 4B1.1(a):

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least *two prior* felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (emphasis added).

Those two prior felonies must not be "related" so that they can be counted separately by the sentencing court. 18 U.S.C. Appx § 4A1.2. Put another way, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an *intervening arrest* (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense)." 18 U.S.C. Appx § 4A1.2(a)(2) (emphasis added); *see generally* ANN., *When are prior offenses "related" under United States Sentencing Guideline sec. 4A1.2 so as to be treated together for sentencing*, 128 A.L.R.FED. 483 § 31 (1995) . . . . During the sentencing hearing in this case Willis claimed that there was no intervening arrest but could not then produce supporting documentation. Doc. # 753 at 5-13. He supplies it now to show that his prior felonies *are* related because they were *not* separated by an intervening arrest. Doc. # 831 at 4-7.

The Government concedes:

6

> Post-sentencing (and apparently post-appeal, as Willis did not raise this claim in his appeal), Willis obtained copies of the official records in his NDGA cases and he now presents them to the Court in support of his claim that he is entitled to be resentenced absent the career offender enhancement. [*See* Doc 831 -Pgs 4, 7; *see also* Doc 823-Exhibits] The Probation Office has undertaken a review of Willis' filings, and concurs with Willis' claim that he is entitled to be resentenced.

Doc. # 835 at 2.

(Cr. doc. 838 at 1-2 (footnote omitted).)

Again, Willis's prior filing raised this claim on the merits; but he now raises it as an ineffective assistance of counsel claim. Because competent counsel would have investigated the prior convictions to determine whether they were related under U.S.S.G. Manual § 4A1.2, and because the designation as a career offender significantly impacted Willis's recommended sentence under the guidelines, his counsel were ineffective in failing to conduct such an inquiry, and Willis thus should be resentenced under the appropriate sentencing guidelines provisions.

## C.  Ground 2

Willis next complains of a 2-level sentencing enhancement pertaining to a weapon found at his residence. (Doc. 1 at 13.) He argues that counsel were ineffective for failing to "adequately & zealously present a defense [at sentencing] to prove there wasn't a nexus between the weapon and the offense." (*Id.* at 13.) Specifically, he contends that counsel should have offered testimony from Pamela Smith Reynolds, his fiancée, along with other evidence discounting the government's evidence attributing the firearm to him and connecting it to the drug conspiracy. (Br. at 16-22.)

Counsel argued at sentencing that the 2-point enhancement should not be applied but presented no evidence or witnesses to corroborate the contention. (Cr. doc. 753 ("Sentencing Trancript") at 14-29.) The district judge noted that a small amount of drugs, digital scales, and a significant amount of cash were found at Willis's residence along with the firearm. (*Id.*) Moreover, there was no record showing that Willis's fiancée had purchased the gun--"the last record was a 1972 acquisition of it by someone"--or that she actually resided at his residence. (*Id.* at 26.) Finding that it was not "clearly improbable" that Willis possessed the

firearm, *see* U.S.S.G. § 2D1.1 application notes, the judge attributed the firearm to him and sentenced him accordingly. (Sent. Tr. at 30.) Counsel re-raised the issue before the Eleventh Circuit, which held that "the district court did not err by applying the enhancement under § 2D1.1(b)(1) because law enforcement found the firearm at issue in Willis's home along with substantial evidence of drug trafficking activity." *Willis*, 284 F. App'x at 689.

Since possession of the firearm was litigated at sentencing and on appeal, the government argues that Willis is simply repackaging a claim that was already presented before the Eleventh Circuit. (Doc. 8 at 5-6.) Accordingly, it contends that under *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000), the claim should be dismissed out-of-hand, since a claim rejected by the appellate court "does not merit rehearing on a different, but previously available, legal theory." (Doc. 8 at 5-6 quoting *Nyhuis*, 211 F.3d at 1343.) This argument misses the mark, as the circuit court analyzed the claim for *judicial* error in the application of the sentencing guidelines. Willis, in contrast, argues *attorney* error (i.e., failing to present additional evidence supporting his contention that

there was no nexus between the firearm and the offense). (Doc. 1 at 19.) Hence, unlike the movant in *Nyhuis*, he is not merely "re-packaging" his claim of judicial error as a claim of ineffective assistance of counsel.

Willis argues that counsel should have presented testimony from Reynolds verifying that she owned the weapon and had a concealed weapons permit to carry it, along with financial records showing that the money discovered in his residence came from his real estate construction and investment business. (Br. at 22.) In addition, Willis contends that the digital scales are the type used for weighing mail, and that he used them for his music production business. (*Id.*)

Most of this "§ 2255 evidence" carries little weight; a reasonable attorney certainly could have found highly suspect Willis's claim that the money was legitimate and that the digital scales were simply used for weighing mail. Codefendant Julius Pinkston, for that matter, indicated that the construction business was a front for Willis's drug activities.[2] (PSI ¶ 7.) The evidence regarding Reynolds's possession of the firearm presents a somewhat closer call but still falls short. She attests that she

_____

[2] Indeed, Willis states later in his brief "that [Julius] Pinkston was employed by [him] and worked as an employee for his Home Improvement business." (Br.at 39.)

often stayed with Willis, the gun belonged to her, she had a concealed weapons permit to carry the weapon, and that she related all of this information to Willis's attorney, Richard Darden. (Doc. 2-4 at 14-16.) She also swears that she owned the firearm because her brother was murdered during a home invasion and that she only kept it with her while Willis was away, since he had informed her that he was a convicted felon. (*Id.*) And, it is undisputed that Willis was under arrest when his home was searched, which corroborates her account of the events. (PSI ¶ 12.) Yet, Reynolds "informed [DEA Agent Stephen Tinsley] that she was not residing at [Willis's] residence [on the night of the search] and she had only visited the residence upon defendant's request that she check on items in the garage." (PSI objections.) Moreover, there were allegations that she was involved in Willis's illegal business, traveling with him on several occasions when he transported drugs. (Doc. 2, Ex. A at 2-3.) So her credibility was far from perfect and there was a conflict in the evidence.

"Generally . . . the decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel." *Blanco v.*

*Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991); *United States v. Teague*, 953 F.2d 1525, 1536 (11th Cir. 1992). The decision to call some witnesses and not others is "the epitome of a strategic decision." *Temple v. Morton*, 2007 WL 2141823 at * 2 (11th Cir. 2007) (unpublished) (quoting *Waters v. Thomas*, 36 F.3d 1506, 1512 (11th Cir. 1995)); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (noting that uncalled witness complaints at sentencing are disfavored as they are matters of trial strategy). Since courts give great deference to choices made by defense counsel that are arguably dictated by a reasonable strategy, strategic choices made after a thorough investigation of the law and facts are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91; *Jennings v. McDonough*, 490 F.3d 1230, 1244 (11th Cir. 2007); *Stephenson v. Kemp*, 2007 WL 2874319 at * 9 (S.D. Ga. Sept. 26, 2007); *Blankenship v. Terry*, 2007 WL 4404972 at * 7 (S.D. Ga. Dec. 13, 2007) (unpublished).

Here, there was conflicting evidence as to whether Reynolds--Willis's fiancée--was actually staying at the residence at the time of the search. Moreover, there was evidence that a substantial amount of cash and scales were found at Willis's home. The Court is thus convinced that

the decision not to call Reynolds or offer additional evidence of her ownership and possession of the weapon was a reasonable trial strategy. Nor was there a good reason to raise this issue on appeal.[3]

## D.   Ground 3

Willis next contends that the drug quantities attributed to him were incorrect and that counsel were ineffective for failing to adequately investigate the basis for the quantity calculations.[4]   (Doc. 1 at 16.)

---

[3] Willis also contends that the drug conspiracy was long over before the weapon was seized. (Doc. 2 at 21.) The indictment alleged that Willis's part in the conspiracy lasted from May 2005 to July 2006. (Id.) While the PSI shows that Willis stopped actively supplying the conspirators in December 2005, there is no indication that he had entirely ceased participation in the conspiracy. (PSI ¶ 6, 15, 17.) And his home contained a significant amount of cash that was likely proceeds from the conspiracy. (Id. ¶ 13.) Consequently, it was not unreasonable for counsel to conclude that it would unnecessarily antagonize the sentencing judge to assert, without convincing proof, that the items seized from Willis's house had not been used in furtherance of the conspiracy.

[4] The underlying argument that the drug quantity calculations were incorrect was not raised on direct appeal. "Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). Consequently, to the extent he claims that the calculations are incorrect, his claim is procedurally defaulted. In order to overcome a procedural default, a movant must demonstrate cause and prejudice or actual innocence excusing it. Id. Here, however, the Court must analyze the argument under Willis's parallel ineffective assistance of counsel claim. Such claims are not subject to procedural default, for they "may be brought in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). Indeed, they can supply cause for failing to raise an issue on direct appeal. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Specifically, he objects to the PSI's estimated 32 total kilograms.[5] (PSI ¶ 17.) Willis asserts that he only transported between 5 and 15 kilograms, which would lower his base offense level under the United States Sentencing Guidelines from 34 to 32.[6]  *See* U.S.S.G. Manual § 2D1.1(c)(3).

A district court may take into account extra-verdict enhancements during sentencing only if admitted or proven by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). If the drug quantities listed in the PSI are supported by a preponderance of the evidence, failure to object to those quantities would

---

[5] Willis also contends that the sentencing judge did not have discretion to sentence him according to the PSI because he objected to the drug quantity findings. (Sent. Tr. at 5.) He cites to *Blakely v. Washington*, 542 U.S. 296 (2004), for the proposition that "the state is free to seek judicial sentence enhancements so long as the defendant . . . stipulates to the relevant facts." *Id.* at 310. *Blakely*, however, does not apply in this instance. As noted in the text following this note, it is well established that a district judge may "use extra-verdict enhancements [established by a preponderance of the evidence] . . . to increase a defendant's base offense level" under the Sentencing Guidelines. *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005); *id.* at 1300-1306 (noting that such fact-finding by the district judge at sentencing did not contravene the principles established in *United States v. Booker*, 543 U.S. 220 (2005)). Here, the district judge adopted the factual statements contained in the PSI. Consequently, there was no error and no reason for counsel to object on this ground.

[6] Willis admits that the calculation had already been dropped from 64 kilograms to 32 kilograms during plea negotiations. (Doc. 2, Ex. 4n ¶ 44.)

14

have had no impact on the outcome of the case, as movant cannot establish prejudice under *Strickland*. In that regard, the "'preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence.'" *United States v. Wynn*, 2007 WL 4208637 at * 1 (11th Cir. Nov. 30, 2007) (unpublished) (quoting *United States v. Bernardine*, 73 F.3d 1078, 1080 (11th Cir. 1996)).

Willis pled guilty to conspiring to provide cocaine in furtherance of the conspiracy from May 2005 to December 2005. (Br. at 22.) While the PSI notes that "[t]he amounts of cocaine [Willis provided to the conspirators] var[ies] greatly depending upon which codefendant's statement is believed," there is no evidence (other than Willis's present assertion) that he sold fewer than 15 kilograms of cocaine in furtherance of the conspiracy. (PSI ¶ 17.) Several codefendants indicated that he provided well in excess of 15 kilograms of cocaine.[7] Mike Pinkston (who

---

[7]   The government agreed not to use any information furnished by Willis against him in determining his guideline range. (Doc. 900 at 2, 4.) Nevertheless, it bears on the prejudice inquiry that during the trial of several co-defendants, Willis essentially admitted that he had transported more than 15 kilograms of cocaine in furtherance of the conspiracy. Willis stated that he began selling Julius Pinkston cocaine in August 2005. (Cr. doc. 775 at 125.) He stated that he fronted Pinkston 9 ounces of

admittedly "never liked Willis") indicated that Willis delivered multiple kilograms of cocaine to the conspirators on a weekly basis over that time. (*Id.* ¶ 10.) Julius Pinkston, Mike's father and the ringleader of the operation, acknowledged that he dealt with Willis at least 10 times, purchasing as much as 4 kilograms of cocaine at a time from him, and his account was directly corroborated by Kimbley Pinkston, Stephanie

---

cocaine initially, then provided him half a kilogram, but he began to ship him two to four kilograms up to twice a week:

> Q    All right.  How many times overall would you say [th]at you fronted cocaine to Julius Pinkston?
>
> A    I believe about ten times I can say.
>
> Q    All right.  After you got into the routine of it, did y'all have an amount that was typical?
>
> A    Repeat that again.
>
> Q    How much was it on regular basis?  How much each time you fronted [Pinkston], did it reach a point where it was fairly consistent?
>
> A    Yes, sir.
>
> Q    And how much were you giving him on those occasions?
>
> A    Two to four.
>
> Q    Kilograms?
>
> A    Two to fo[u]r keys.  Yes, sir.

(*Id.* at 129-30.)  Taking his testimony as true, it supports a drug attribution of greater than 15 kilograms.

Collins, Homer Holloway, Brentis Hendrix, and Willie Mincey. (*Id.* ¶ 7, 8, 9, 11, 14, 15.) Stephanie Collins, for that matter, said that Willis provided 6 kilograms in December 2005 alone. (*Id.* ¶ 6.)

Willis challenges all of this testimony as fabricated, pointing to inconsistencies in the investigation reports and emphasizing that these individuals were all friends or relatives of co-defendant and organizational head Julius Pinkston. (Br. at 25-26.) Nevertheless, the evidence against Willis is overwhelming (despite Willis's submission of the affidavits of fellow inmates to the contrary (*see* doc. 2, Ex. 5)). Since ample evidence showed that Willis provided his co-conspirators with more than 15 kilograms of cocaine (the amount necessary to keep Willis within the same guidelines range), counsel did not err in deciding not to pursue an objection on that ground. Further, Willis cannot show that he was prejudiced by his counsels' failure to object on this ground, as he raised the objections at sentencing himself.[8] (Sent. Tr. at 5-6.)

---

[8] Willis states that his counsel chose not to object to the amount because they did not want to antagonize the probation officer, who allegedly threatened to impose a higher drug quantity amount based upon the testimony of other co-conspirators. Willis implies that the probation officer's threat to hold him accountable for greater drug quantity was improper. (Br. at 24.) That is not the case. As noted above, there was significant evidence indicating that Willis provided greater than 32 kilograms of

17

### E.    Grounds 4 and 5

In ground 4, Willis contends that he was provided ineffective assistance of counsel regarding his motion to suppress. (Doc. 1 at 17; Br. at 33.)  Specifically, he contends that his suppression hearing attorney, Rand Csehy, was ineffective for blundering in his attempt to assert a *Franks v. Delaware*, 438 U.S. 154 (1978), violation regarding a search warrant issued for Willis's home, business, and storage units.  He also faults Richard Darden for failing to raise the issue on appeal.  (Br. at 33, 37.)  In ground 5, Willis contends that counsel was ineffective for failing to object to improper venue in this district.  (*Id.* at 36-37.)  Specifically, he alleges that counsel advised him to admit that "he had agreed to commit a crime with Julius Pinkston, in the Southern District" when he had not in fact done so.[9]  (*Id.*)

---

cocaine to the other conspirators (along with an undisclosed amount of marijuana). And since Willis was charged as a conspirator, he could have been held liable for drug quantities beyond those that he directly provided.  *See* U.S.S.G. Manual § 1B1.3(a)(1)(B).

[9] In addition, movant asserts the underlying claims--that Agent Waters, the warrant affiant, omitted and mischaracterized information and that venue was improper.  (Br. at 8-9.)  As noted earlier, these substantive claims are procedurally defaulted.

Criminal defendants who enter an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[10] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). That is, "[a] defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (citing *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a 'conditional guilty plea' in accordance with Federal Rule of Criminal Procedure 11(a)(2)." *Pierre*, 120 F.3d at 1155. Here, Willis knowingly and voluntarily, with the benefit of competent counsel, entered a plea of guilty but did not reserve the right to appellate review of the suppression issue. (Cr. doc. 900.) Accordingly,

---

[10] The government did not raise Willis's waiver in its brief. (Doc. 8 at 10-19.) Regardless, Willis's underlying claims are without merit, so Willis was not prejudiced under any standard.

he may only attack the plea itself by showing that the advice he received from counsel undermined "the voluntary and intelligent character of the plea."[11] *Tollett*, 411 U.S. at 267.

Because Willis did not enter a conditional guilty plea, Darden, his appellate attorney, was foreclosed from arguing the suppression issues

---

[11] As explained in *Singleton v. Sec'y Dep't of Corrs.*, 2009 WL 975783 (M.D. Fla. Apr. 9, 2009) (unpublished),

[a] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Id.* at 267. "[A] guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Although guilty pleas foreclose most claims from collateral attack, *see United States v. Broce*, 488 U.S. 563, 569 (1989), a plea does not bar the collateral review of ineffective assistance of counsel claims to the extent that the alleged ineffectiveness bears upon the voluntariness of the guilty plea. *See Hill*, 474 U.S. at 53-59. A prisoner may challenge his guilty plea on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett*, 411 U.S. at 267; *see also, Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir.1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions in his counsel's advice regarding the plea.") (citation omitted); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir.1983) ("Smith's guilty plea was voluntarily and knowingly made, [t]hus he cannot now attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea."); *see also, United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.) (voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered guilty plea involuntary), *cert. denied*, 531 U.S. 919 (2000).

*Id.* at *4.

on direct appeal and thus did not perform deficiently.[12] *United States v. White*, 136 F. App'x 227, 228 (11th Cir. 2005) ("A district court's refusal to suppress evidence is non-jurisdictional and is waived by a guilty plea."). Further, under the prejudice prong of the ineffectiveness inquiry, movant must establish "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). The only prejudice Willis points to on the suppression issue is the "illegal [two point] sentencing enhancement" for possession of the firearm seized from his home. (Br. at 37.) Nowhere does he allege that he would not have pled guilty had the firearm been suppressed. After all, he was not charged with a firearm offense and would have faced a significantly longer sentence had he gone to trial. Willis simply was not prejudiced within the meaning of *Hill,* and ground 4 is meritless.

Moreover, the underlying Fourth Amendment issue is without merit. As alleged in the warrant, Willis sold and transported significant amounts of cocaine to Pinkston. Willis's Atlanta home was equipped

---

[12] Willis admits that Darden properly advised him that the issue was waived by the entry of the guilty plea. (Br. at 41.)

with 4 closed-circuit security cameras (even if they were, as he alleges, there for his fiancée's protection), he had a prior history of drug trafficking in the Northern District, several co-defendants indicated that he regularly traveled from Atlanta to this District with large quantities of cocaine, he was arrested in the Savannah airport carrying a significant amount of currency and became nervous when questioned about the contents of his Atlanta storage units. (Doc. 2, Ex. A at 2-4.) This evidence, together with the affiant's knowledge that drug traffickers often hide their drugs in mini-storage warehouses and protect their homes with security cameras "to warn them of the presence of law enforcement investigating them or competitors, who may attempt to rob or harm them," furnished sufficient probable cause justifying the issuance of the warrant for his home and storage units. (*Id.* at 5.)

Willis naturally insists that such "search warrant evidence" is insufficient. (*See* cr. doc. 549.) But other than complaining of minor inconsistencies revealed in different records over the course of the investigation of the conspiracy, Willis points to no evidence that the affiant lied or was reckless, or that the "misrepresentations" and

"omissions" were essential to a finding of probable cause.[13] *Franks*, 438 U.S. at 171-72. Consequently, counsels' alleged mishandling of the claim simply did not prejudice Willis under the traditional *Strickland* framework.

Willis's venue argument is also hollow. He contends that William Bell, who represented him at the plea stage, "continuously advised him to say, 'I agreed to distribute cocaine with Julius Pinkston in the Southern District o[f] Georgia.'" (Br. at 45.) He asserts, however, that he "is a resident of the Northern District of Georgia, and [he] never was

---

[13] Willis contends that the magistrate should have been informed that Pinkston absconded after giving the testimony recited in the affidavit, that Pinkston's son disliked Willis, that Pinkston was mistaken as to whether Willis owned an apartment in Savannah, that the informants had significant criminal histories, that Willis was not the only source of cocaine to the Pinkston syndicate, that some of the information came from custodial interviews, and that Pinkston had never been to Willis's house and gave a description fitting other houses in the area. (Br. at 33-44a.) He also indicates that much of the information was stale and that the affiant was mistaken as to whether Pinkston and Willis were still in cahoots and had met in Detroit. (*Id.*)

The Constitution provides that no search warrant shall issue except "upon probable cause." U.S. Const. amend. IV. While the probable cause standard has never been precisely quantified, it is settled that it requires neither convincing proof nor even a prima facie showing of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Here, there was clearly a basis for the finding of probable cause absent the "misstatements" and with the benefit of the "omissions" of which Willis complains. Willis is in effect attempting to impose the beyond-a-reasonable-doubt standard to the issuance of the warrant, but a "substantial chance" of criminal activity is all that is required, "not an actual showing of such activity." *Id.* at 244 n. 13.

in agreement, nor distributed drugs in the Southern District of Georgia."
(*Id.*) Consequently, he contends "that his guilty plea reflected his attorney's improper advice and misrepresentation about the nature of the plea" and that "defense counsels['] improper advice and misrepresentation proved to be deficient performance because they refused to advise movant of the jurisdictional defect, which was vital to his defense." (*Id.* at 46.) Willis explicitly claims that "had it not been for the inadequate assistance of counsel, Movant wouldn't have pled guilty, with those phraseology, which was told to him to say by counsel." (*Id.* at 49 (emphasis removed).)

This case is not an exception to the *Tollett* rule, as even if venue was improper it did not give rise to a jurisdictional defect--"[v]enue is distinct from jurisdiction."[14] *United States v. Micciche*, 165 F. App'x 379

---

[14] Embedded in his venue argument, he contends that the Court did not have jurisdiction over his person. (Br. at 47.) Aside from being procedurally defaulted, the claim is without merit:

> It is well settled that a district court has *personal* jurisdiction over any party who appears before it, regardless of how his appearance was obtained. *United States v. Stuart*, 689 F.2d 759, 762 (8th Cir.1982); *United States v. Warren*, 610 F.2d 680, 684 n. 8 (9th Cir.1980). 18 U.S.C. § 3231, moreover, gives the district court *subject matter* jurisdiction over "all offenses against the laws of the United States."

at 386 (6th Cir. 2006) (citing *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) and holding that a voluntary plea waives venue objections)); *accord United States v. Valdez*, 269 F. App'x 805, 810 n.4 (10th Cir. 2008) ("Venue is not jurisdictional and, unlike jurisdiction, can be waived."). But since Willis presents the venue issue within an ineffectiveness claim, the Court must determine whether counsel provided constitutionally deficient plea advice on that score.

Willis relies heavily upon an exchange at sentencing between the district judge and the prosecuting AUSA to support the alleged failure in venue:

> MR. McCULLOUGH: . . . And we can't charge a substantive firearm offense that does not occur inside the Southern District of Georgia. So, if there was ample possession of a firearm by a convicted felon, or possession of a firearm in furtherance of a drug related crime, I didn't have venue over those offenses.
>
> So we consider them to be an overt act of the conspiracy, the fact that he was in possession of these items. But I couldn't charge him.
>
> THE COURT: What are the essential elements of the charge, Mr. McC[u]llough?

*United States v. Lussier*, 929 F.2d 25, 27 (9th Cir. 1991) (emphasis in original).

MR. McCULLOUGH: Well, we charged him only with conspiracy. The elements of the offenses--we could not establish--I couldn't charge him with possession by a convicted felon for [a] firearm recovered in Atlanta. I don't have venue over that.

(Sent. Tr. at 21-22.)

The Southern District of Georgia was an appropriate venue to try this case. "Where a conspiracy is concerned, venue is . . . proper in any district where 'an overt act' was committed in furtherance of the conspiracy." *United States v. Matthews*, 168 F.3d 1234, 1246 (11th Cir. 1999) (citing *United States v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990)). Further, "[t]he overt act need not be committed by a defendant in the case; the acts of accomplices and unindicted co-conspirators can also expose the defendant to jurisdiction." *Id.* (citing *United States v. Delia*, 944 F.2d 1010, 1014 (2d Cir.1991)); *see also* 18 U.S.C. § 3237(a) ("any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). Willis does not dispute that he sold drugs to Pinkston and that Pinkston distributed those drugs in this

district.[15]  Any challenge to venue here would have failed.  Moreover, it appears that McCullough was mistaken as to the law.  Since this was an appropriate district to try the conspiracy, it would have also been the proper venue to try an 18 U.S.C. § 924(c) charge for possession of a firearm in furtherance of a drug trafficking crime, if such a charge had been filed.  *See United States v. Suarez*, 313 F.3d 1287, 1293 n. 3 (11th Cir. 2002) (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280-82 (1999) (holding that crimes consisting of distinct parts committed in different locations may be tried in any district where any part of the crime can be proved to have been committed)).  Because Bell's advice was not professionally deficient and Willis was not prejudiced, the venue claim fails.

### F.  Ground 6

Willis filed a sixth ground for relief as an addendum to his motion. (Br. at 53.)  He asserts that counsel was ineffective "in advising [him]

---

[15] Indeed, not only did Willis admit on the record to the sentencing judge that he had committed a crime in this district (*see* cr. doc. 752 at 43 (Rule 11 Transcript)), he again admitted it while testifying at the trial of several of his codefendants. (Cr. doc. 775 at 127.)  Moreover, several witnesses stated that he did, in fact, transport drugs to Metter, Georgia, which is within the Southern District. (PSI ¶ 6.)

into a harmful plea agreement." (*Id.* (emphasis removed)) Specifically, he contends that "[a]ny competent attorney would have made his client aware of his rights in a plea agreement and the serious consequences 'of what he's' gonna say, and to make sure the first thing in his plea agreement was such as, no enhancements, besides what Movant had agreed and ple[]d guilty to."

Willis's claim is belied by the Rule 11 colloquy between himself and the district judge:

> Q    Now, you are familiar with the Federal Guidelines Sentencing; aren't you?

> A    Yes, Your Honor.

> Q    Those guidelines have been ruled by the United States Supreme Court not to be mandatory.  Now, they are advisory to the judge.   But what I will still be required to do is calculate the guidelines sentence.  And in almost all cases, the sentence will be within the guidelines.  Do you understand that?

> A    Yes, Your Honor.

> Q    And as you know from your previous experience, criminal history is one of the matters I have to look at.  The amount of drugs, the role you played, and whether or not you have accepted responsibility, you get a significant reduction off of that, if you have told the truth and accepted responsibility.  Do you know that?

A     Yes, Your Honor.

Q     All right. And I have no idea how you will fit in there, because I know nothing about your background. I am sure Mr. Bell and Mr. Darden have tried to do some calculations based upon all of the information you have given them, and what they have received from the government, and tried to estimate what your sentence will be.

Chances are they are very accurate. I have made no calculations. I have made no investigation. But sometimes, as you know, the lawyers' calculation or estimate is wrong. They have just flat got the wrong information, or maybe they didn't do the arithmetic correctly. I would be surprised if that happened in this case.

But if it did, you are still bound by your plea agreement and the sentence even if it is more severe than you had anticipated. Do you understand that?

A     Yes, Your Honor.

Q     All right. Now, as is still the case, if I accept the plea here today, the probation officers will be task[ed] to make a complete investigation of you. If you dispute what they say your involvement or the amount of drugs, or whatever, and you can't reconcile it with the probation officers, then the Court has to conduct a hearing on it before sentencing you. And I have to come to a conclusion as to what is correct.

Do you understand that?

A     Yes, sir.

(Rule 11 Tr. at 28-29.) Further, the district judge stated that "[t]he government may make a recommendation at sentencing. The probation officers will make a recommendation at sentencing. I will listen to all of them. But I'm not bound by their recommendations. Do you understand that?" (*Id.* at 30.) Again, Willis replied "yes, your honor." (*Id.*)

Willis thus was fully advised of the possibility that his sentence would be adjusted based upon enhancements outside of the plea agreement, including drug quantities, and that he may be bound by his "plea agreement and the sentence even if it is more severe . . . than anticipated." Indeed, he had been through the process before in another federal criminal prosecution in the Northern District of Georgia. (*Id.* at 19.) In the face of such a record, he can hardly say that his plea was not knowing or voluntary or that any failure by counsel to specifically advise him of the possibility of sentencing enhancements was prejudicial.

Willis also characterizes the sentencing enhancements for drug quantities and possession of the firearm to be a "breach of plea agreement," and he states that he was not aware that the AUSA could mention his testimony from the trial of his codefendants Mistrell Alvin

and Andrea Franklin. (Br. at 53a (emphasis removed).) He has not shown any professional error on the part of counsel regarding the AUSA's reference to Willis's testimony against his co-defendants. Reasonable counsel would not object to such a showing where it is the basis for a *downward* departure.[16] (Sent. Tr. at 31.) Moreover, the plea agreement stated that the information would not be used *against* Willis,

---

[16] The AUSA stated:

[Willis] also outlined his own involvement in that, indicating that he had been providing cocaine to Julius Pinkston starting in August of 2005. He confirmed that he started providing Julius Pinkston with nine ounces of cocaine, and sold him as much as two to three kilograms of cocaine hydrochloride, and he did this twice per week.

That was important to the government, Your Honor, not just because of the testimony against the defendants, but also because it helped establish the minimum quantities that we needed to establish for the threshold for the jury's finding as to the level of the conspiracy.

He also advised that he ma[de] about $3,000 for each kilogram of cocaine he sold. So that was his testimony, Your Honor.

And as we have indicated in our cooperation agreement, in our cooperation report in the 5K, we believe that his testimony about the activities of the people he testified about, particularly Mistrell Alvin and Andrea Franklin was truthful. He provided fairly unique information about the Atlanta side of the organization, which is where we've always had the least working knowledge about what was really going on up there, because of the flight of Julius Pinkston.

We believe that his testimony was important in securing the conviction of Mistrell Alvin.

(Sent. Tr. at 32.)

and it was not.[17]  (Cr. doc. 900 at 2, 4.)  Willis received a nearly four-year

departure below the recommended guidelines sentence--he was

sentenced to 192 months' imprisonment, though the guidelines advised a

minimum of 235 months.  (*Id.* at 30, 36.)  Nothing in the record indicates

that Willis's counsel was not competent, that the plea was not knowing

and voluntary, or that he would not have accepted the plea agreement

had counsel forewarned him more fully of the consequences of his

actions.  *See Tollett*, 411 U.S. at 267; *Hill*, 474 U.S. at 59-60.  Hence, this

claim is meritless.

## III.  CONCLUSION

Willis has demonstrated that his attorneys were ineffective for

failing to object to the career offender enhancement at sentencing and on

appeal, and because counsel's error significantly increased his guidelines

---

[17]  In the plea agreement, the government promised to recommend a downward departure for acceptance of responsibility, to dismiss other counts of the indictment if applicable (there was only one count here), not seek any sentencing enhancements pursuant to 21 U.S.C. § 851 (which takes into account criminal history and could have exposed Willis to a life sentence), not use the information he provided to the government against him at sentencing, and to advise the Court of the extent and value of his cooperation under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.  (Cr. doc. 900 at 2.)  In addition, the government promised to permit him to plead to a 60 month confinement offense if he were instrumental in Pinkston's capture.  (*Id.* n.1.) Unfortunately for Willis, his efforts in that regard did not bear fruit.

sentence, he is entitled to resentencing by this Court. All other grounds for relief asserted in his § 2255 motion are without merit and should be denied. Accordingly, Willis's § 2255 motion (doc. 1) should be **GRANTED IN PART AND DENIED IN PART.**[18]

**SO REPORTED AND RECOMMENDED** this _4th_ day of May, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

[18] Willis's motion for appointment of counsel for his § 2255 motion and an evidentiary hearing (doc. 4) is **DENIED**, since no further factual development is necessary to the resolution of his claims. *See* Rule 8, Rules Governing § 2255 Proceedings; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (no right to counsel when collaterally attacking conviction or sentence).